**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LISA MARTENEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case 4:24-cv-04511** |
| | § | |
| **ANM MEDIA, LLP, INC. D/B/A MY-CPE,** | § | |
| | § | |
| **Defendant.** | § | |

# DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

HINSHAW


**5151 San Felipe, Suite 1380**
**Houston Texas 77056**
**Telephone 346-344-4500**
**Facsimile 312-704-3001**

**1717 Main Street, Suite 3625**
**Dallas, Texas 75201**
**Telephone: 945-229-6380**
**Facsimile: 312-704-3001**

**TABLE OF CONTENTS**

**Page(s)**

I. SUMMARY OF THE ARGUMENT ........ 1

II. STATEMENT OF THE NATURE AND STAGE OF PROCEEDING ........ 2

III. STATEMENT OF RELEVANT FACTS ........ 2

IV. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW ........ 3

V. ARGUMENT ........ 5

A. Plaintiff Fails to Allege that Defendant Knowingly Disclosed Plaintiff's PII. ........ 5

B. Plaintiff Fails to Allege that Defendant Disclosed Plaintiff's PII ........ 6

(i) Plaintiff Fails to Allege The Information is PII. ........ 8

(ii) Fails to Allege How Defendant "Disclosed" Anything. ........ 9

C. Plaintiff fails to Allege that Defendant Knowingly Disclosed Plaintiff's PII Within the Applicable Statute of Limitations. ........ 12

VI. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 4

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 U.S. Dist. LEXIS 129038 (S.D.N.Y. 2017) ... 6

*Brown v. Learfield Commc'ns, LLC*,
713 F. Supp. 3d 355 (W.D. Tex., Jan. 29, 2024) ... 5

*M.K. v. Google LLC*,
No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 51895 (C.D. Cal. Mar. 27, 2023) ... 8

*Martinez v. D2c, LLC*,
No. 1:23-cv-21394, 2024 U.S. Dist LEXIS 178570 (S.D. Fla. Oct. 1, 2024) ... 11

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ... 8, 9

*Sidney Hillman Health Ctr. V. Abbott Labs, Inc.*,
782 F.3d 922 (7th Cir. 2015) ... 11

*Walker v. Meta Platforms, Inc.*,
No. 22-cv-02442-JST, 2023 U.S. Dist. LEXIS 93111 (N.D. Cal. Mar. 23, 2023) ... 9

*White v. Samsung Elecs. Am., Inc.*,
No. 17-1775, 2019 U.S. Dist. LEXIS 254148 (D.N.J. Aug. 20, 2019) ... 8

**Statutes**

18 U.S.C. § 2710(a)(1) ... 5

18 U.S.C. § 2710(a)(3) ... 5, 9

18 U.S.C. § 2710(a)(4) ... 5

18 U.S.C. § 2710(b)(1) ... 4, 5

18 U.S.C. § 2710(c)(3) ... 1, 12

ANM Media, LLP, incorrectly sued as ANM Media, LLP, Inc. d/b/a MY-CPE, through its undersigned counsel, moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), and states:

## I. SUMMARY OF THE ARGUMENT

The complaint should be dismissed because plaintiff fails to allege sufficient <u>facts</u> to plausibly demonstrate that defendant violated the VPPA. Plaintiff cannot maintain a plausible VPPA claim because plaintiff has not sufficiently alleged that defendant knowingly disclosed plaintiff's "personally identifiable information" or "PII" under the VPPA without consent. Instead, the bulk of the complaint relies entirely on labels and conclusions designed to intentionally obscure (the lack of) actual facts that relate to plaintiff's alleged usage of defendant's website. Only paragraphs 72-81 of the complaint purport to allege facts related to the plaintiff. ECF No. 1 ¶¶ 72-81. The rest of the complaint only generally refers to defendant's website without alleging that these general allegations relate to plaintiff in any way whatsoever. Overall, the complaint is full of threadbare recitals that merely parrot the elements of a VPPA cause of action without providing any supporting facts.

The complaint is also very cagey about timing. The VPPA's statute of limitations is two years. 18 U.S.C. § 2710(c)(3). Plaintiff alleges that she "purchased an annual subscription" from defendant "on or around October 20, 2022." ECF No. 1 ¶ 72. However, the complaint was filed on November 15, 2024. ECF No. 1. Therefore, some of the predicate facts referenced in the complaint did not take place within two years of the filing of the complaint. The complaint fails to sufficiently allege *when* much of *anything* (after October 20, 2022) happened. The complaint concludes that plaintiff is entitled to "tolling" because she did not discover her alleged VPPA claim until October 2024, when her attorney conveniently identified it for her. ECF No. 1 ¶¶ 82-87. This Court should not allow this case to go forward on so few alleged facts.

## II. STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

Plaintiff's complaint was filed on November 15, 2024. ECF No. 1. The complaint purports to allege that defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Defendant sought and was granted extension of time to February 5, 2025 to file its responsive pleading. ECF Nos. 7-8, 13-14, 15-16. Defendant now moves pursuant to Rule 12(b)(6) to dismiss the complaint.

## III. STATEMENT OF RELEVANT FACTS

Plaintiff alleges that defendant provides online continuing education to the accounting, tax and finance industries, as well as other professions. ECF No. 1 ¶ 3. Plaintiff's complaint purports to generally describe how plaintiff's counsel believes defendant's website hypothetically functioned on or around October and/or November of 2024. ECF No. 1 ¶¶ 3-14, 30-71; *see also* ECF No. 1 at fn. 8. However, it does not connect any of these generalized facts to plaintiff and/or plaintiff's allegations, nor does it purport to allege that defendant's website functioned the same in 2022 and/or 2023. Plaintiff does not allege that any of the general hypothetical allegations regarding the website happened to her.

Plaintiff alleges that she purchased a subscription from defendant's website on or around October 22, 2022. ECF No. 1 ¶ 72. She also alleges that she purchased a second subscription on or around December 4, 2023. *Id*. Plaintiff alleges that she provided her name, address, phone number, email address, IP address … "and any cookies associated with her devices." ECF No. 1 ¶ 73. Plaintiff does not identify her devices nor any software used. Plaintiff does not identify whether she used a browser or not, or whether she used some sort of other interface. She does not identify what associated "cookies" she references and/or how she provided them to defendant.

Plaintiff alleges that she "watched videos" "from October 2022 until October 2023" and "from December 2023 through the present." ECF No. 1 ¶ 74. Plaintiff does not allege what videos

she watched. She does not allege how many videos she watched. She does not allege whether the videos were live videos, prerecorded videos, free videos or otherwise. She does not specifically allege *when* she watched anything. Plaintiff does not allege how she watched any videos, such as whether she used a computer, an iPad, a mobile device, a telephone, a television or something else. Again, plaintiff does not identify her devices nor any software used to watch any videos. Plaintiff does not identify whether she used a browser or not, or whether she used some sort of other interface and/or a VPN.

Plaintiff vaguely alleges that she "used" her "subscription to view videos" "while logged into her Facebook account, on her laptop and iPad." ECF No. 1 ¶ 75. This overly confusing allegation again does not allege that she watched any videos on any laptop and/or iPad. It only alleges that plaintiff was logged into her Facebook account on these devices. Again, there are no facts explaining *when* plaintiff watched any videos.

Plaintiff speculatively concludes that "[w]hen [p]laintiff purchased and watched videos through [defendant's website], [d]efendant disclosed her event data, which recorded and disclosed the video's title to Facebook." ECF No. 1 ¶ 77. Plaintiff alleges that "[d]efendant also disclosed" plaintiff's "personally identifiable information, including her Facebook ID, to Meta." *Id*. There are no facts that explain how and/or when this purportedly happened. There are no facts alleged as to what plaintiff means by the repeated use of the label "disclosed" and/or how and/or when defendant disclosed anything related to plaintiff to either Facebook and/or Meta.

Finally, plaintiff concludes that defendant "knowingly disclosed" plaintiff's PII to "third parties," ECF No. 1 ¶ 80, without offering any supporting facts whatsoever for this conclusion.

## IV. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

This Court is to rule upon whether plaintiff's complaint survives a motion to dismiss

brought pursuant to Rule 12(b)(6). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. Further, conclusions of fact and law "are... not entitled to the assumption of truth" and may be disregarded. *Iqbal*, 556 U.S. at 679. A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*.

This Court is also to rule upon whether plaintiff's complaint states a claim under the VPPA. The VPPA was enacted in 1988 in response to the publication of a "profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store." Sen. Rep. 100-599, at 5 (1988). The purpose of the VPPA is to "preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials." *Id.* at 1. The VPPA provides a cause of action for individuals when "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

To state a claim under the VPPA, plaintiff must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning plaintiff. 18 U.S.C. § 2710(b)(1). A "video tape service provider" is

defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Personally identifiable information" is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Finally, a "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). *See also Brown v. Learfield Commc'ns, LLC*, 713 F. Supp. 3d 355, 360-361 (W.D. Tex., Jan. 29, 2024).

## V. ARGUMENT

### A. Plaintiff Fails to Allege that Defendant Knowingly Disclosed Plaintiff's PII.

In order to state a VPPA claim, plaintiff must allege facts to plausibly support the conclusion that defendant "knowingly" disclosed plaintiff's PII. This is an element of the claim itself. *See* 18 U.S.C. § 2710(b)(1). However here, as it relates to defendant "knowingly" disclosing plaintiff's PII, plaintiff's complaint only offers a bare conclusory statement. ECF No. 1 ¶ 80. Plaintiff alleges, not surprisingly, that defendant "knowingly … disclosed [p]laintiff's [PII] to third parties." *Id*. However, this is just a formulaic recitation of one of the elements of a VPPA cause of action. In other words, the complaint's allegation concerning defendant's "knowledge" in this case is quintessentially the type of "naked assertions devoid of factual enhancement" and "threadbare recitals" that *Iqbal* rejects and nothing more.

"[T]he term 'knowingly' connotes actual knowledge. It is not enough … that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing[.]" *In re Hulu Priv. Litig.*., 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (citing 18 U.S.C. § 2710(b)(1)). "[T]he knowledge element of the VPPA violation is intertwined with the definition of PII. If [the defendant] did not think it was conveying PII, then there could be no knowledge of

the conveyance, regardless of whether it knew what Facebook might do with the information." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 U.S. Dist. LEXIS 129038, *27 (S.D.N.Y. 2017). "'[K]knowingly' means consciousness of transmitting private information. It does not merely mean transmitting the code," or the defendant's knowledge of such code transmission. *Hulu*, 86 F. Supp. 3d at 1095.

Simply put, plaintiff's complaint contains no facts whatsoever supporting the bare conclusion concerning defendant's knowledge related to the purported disclosure of plaintiff's PII. As "knowingly" is an element of plaintiff's VPPA claim, the complaint should be dismissed on this basis alone pursuant to Rule 12(b)(6).

**B. Plaintiff Fails to Allege that Defendant Disclosed Plaintiff's PII.**

Plaintiff's complaint also fails to sufficiently allege that defendant "disclosed" any PII to anyone. While plaintiff's complaint purports to generally describe how plaintiff's counsel believes defendant's website hypothetically functioned on or around October and/or November of 2024, ECF No. 1 ¶¶ 3-14, 30-71; *see also* ECF No. 1 at fn. 8, it does not connect any of these generalized hypothetical facts to plaintiff and/or plaintiff's allegations, nor does it purport to allege that defendant's website functioned the same in 2022 and/or 2023, which is when plaintiff purportedly signed up. Plaintiff does not allege that any of the general hypothetical allegations regarding the website actually happened to her and/or that plaintiff experienced any of what is alleged generally about the website's functioning in October and/or November of 2024.

As it specifically relates to plaintiff, the complaint alleges that plaintiff purchased a subscription from defendant's website on or around October 22, 2022. ECF No. 1 ¶ 72. It also alleges that she purchased a second subscription on or around December 4, 2023. *Id*. Plaintiff alleges that she provided her name, address, phone number, email address, IP address … "and any cookies associated with her devices." ECF No. 1 ¶ 73. Again, plaintiff does not identify her devices

nor any software used. Plaintiff does not identify whether she used a browser or not, or whether she used some sort of other interface and/or a VPN. She does not identify what associated "cookies" she references and/or how she provided them to defendant.

Plaintiff alleges that she "watched videos" "from October 2022 until October 2023" and "from December 2023 through the present." ECF No. 1 ¶ 74. Plaintiff does not allege what videos she watched. She does not allege how many videos she watched. She does not allege whether the videos were live videos, prerecorded videos, free videos or otherwise. She does not specifically allege *when* she watched anything. Plaintiff does not allege how she watched any videos, such as whether she used a computer, an iPad, a mobile device, a telephone, a television or something else. Again, plaintiff does not identify her devices nor any software used to watch any videos. Plaintiff does not identify whether she used a browser or not, or whether she used some sort of other interface and/or a VPN to watch videos.

Plaintiff vaguely alleges that she "used" her "subscription to view videos" "while logged into her Facebook account, on her laptop and iPad." ECF No. 1 ¶ 75. This overly confusing allegation again does not allege that she watched any videos on any laptop and/or iPad. It only alleges that plaintiff was logged into her Facebook account on these devices. Again, there are no facts explaining *when* plaintiff watched any videos.

Plaintiff speculatively concludes that "[w]hen [p]laintiff purchased and watched videos through [defendant's website], [d]efendant disclosed her event data, which recorded and disclosed the video's title to Facebook." ECF No. 1 ¶ 77. Plaintiff alleges that "[d]efendant also disclosed" plaintiff's "personally identifiable information, including her Facebook ID, to Meta." *Id*. There are no facts that explain how and/or when this purportedly happened. There are no facts alleged as to

what plaintiff means by the repeated use of the label "disclosed" and/or how and/or when defendant disclosed anything related to plaintiff to either Facebook and/or Meta.

This Court should require plaintiff comply with *Iqbal*. As currently plead, plaintiff's VPPA claim is essentially conclusory gibberish. Simply put, there are a lot of ways to watch videos. Plaintiff's complaint contains no allegations whatsoever beyond the conclusory statement that she watched videos. Plaintiff then concludes that, as a result of watching the videos, defendant "disclosed" the video titles (without ever alleging anything about the video titles, when they were watched, what type of video it was, how plaintiff viewed it and/or when and/or how defendant disclosed it), as well as "disclosed" plaintiff's Facebook ID without ever explaining in any way, shape or form (1) how the information described is PII; and/or (2) how (even in the most basic way) defendant disclosed anything to any third party.

**(i) Plaintiff Fails to Allege The Information is PII.**

PII "must, at the very least, identify a *particular* person—not just an anonymous individual—*and* connect this particular person with his or her viewing history." *Robinson v. Disney Online,* 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). If the information would not "readily permit an ordinary person to identify a specific individual's video-watching behavior," it is not PII. *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, 290 (3d Cir. 2016). To qualify as PII, the information "must itself do the identifying"—and is not merely "information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson,* 152 F. Supp. 3d at 182. Under the ordinary person standard, "static digital identifiers" such as an IP address, a digital code in a cookie, or a device's unique device identifier do not, without more, constitute PII. *In re Nickelodeon,* 827 F.3d at 286 (dismissing VPPA claim because an IP address, unique device identifier, username, browser settings, and persistent cookie identifiers did not constitute PII); *see also White v. Samsung Elecs. Am., Inc.,* No. 17-1775, 2019

U.S. Dist. LEXIS 254148, *11-12 (D.N.J. Aug. 20, 2019) (static identifiers such as IP addresses, MAC addresses, and zip codes are not PII for purposes of VPPA claims).

Here, plaintiff's complaint is devoid of even the most basic factual allegations supporting the conclusion that defendant disclosed her PII. *See M.K. v. Google LLC,* No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 51895, *8 (C.D. Cal. Mar. 27, 2023) (dismissing VPPA claim because there were "no facts linking these allegations to [the plaintiff], much less identifying what 'personally identifiable information' Google allegedly disclosed, or *to whom* such information was disclosed.") *See, e.g., Robinson,* 152 F. Supp. 3d at 183-84 (dismissing VPPA claim based on failure to allege disclosure of PII).

Further, plaintiff does not allege anything at all concerning the video titles she allegedly watched and/or were allegedly disclosed. This, in and of itself, fails to establish that PII was involved because only certain videos fall under the VPPA. *See* 18 U.S.C. § 2710(a)(3); 18 U.S.C. § 2710(a)(3). For example, live continuing education videos do not. *See Walker v. Meta Platforms, Inc.,* No. 22-cv-02442-JST, 2023 U.S. Dist. LEXIS 93111, *13 (N.D. Cal. Mar. 23, 2023) (dismissing VPPA claim based on a Facebook Live broadcast, noting that courts have "uniformly declined to interpret" live content as being subject to the VPPA) (collecting cases). The allegations in the complaint here fail to raise plaintiff's right to relief above the speculative level.

**(ii) Fails to Allege How Defendant "Disclosed" Anything.**

Furthermore, plaintiff fails to sufficiently explain how defendant "disclosed" anything to anyone. The dictionary definition of a "cookie"[1] and established caselaw on third-party Facebook cookies confirm that Facebook IDs are stored on users' (here, plaintiff's) computers—not by

[1] A cookie is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *Cookie*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cookie.

entities in the position of defendant—and then the cookies and Facebook IDs are subsequently transmitted to Facebook by users' (here, plaintiff's) own browsers because such users (here, plaintiff) have given Facebook consent to collect such information. *See Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 788-789 (N.D. Cal. 2022) ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account— which prevents the data from being used for personalized advertising."). Again, there are lots of ways to watch videos. In order for plaintiff to allege a plausible claim, she should be required to provide some basic non-conclusory facts about when and how she allegedly watched videos. Then, plaintiff should be required to explain how and why she thinks defendant disclosed something related to the videos to a third party. As it currently stands, these facts do not exist in the complaint.

Here, plaintiff fails to provide even the most basic facts as to *what* she used to purportedly access defendant's website and/or how defendant transmitted her PII to a third party. Again, plaintiff alleges that she "watched videos" "from October 2022 until October 2023" and "from December 2023 through the present." ECF No. 1 ¶ 74. Plaintiff does not allege what videos she watched. She does not allege how many videos she watched. She does not allege whether the videos were live videos, prerecorded videos, free videos or otherwise. She does not specifically allege *when* she watched anything. Plaintiff does not allege how she watched any videos, such as whether she used a computer, an iPad, a mobile device, a telephone, a television or something else. She does not identify her devices nor any software used to watch any videos. Further, plaintiff does not identify whether she used a browser or not, or whether she used some sort of other interface and/or VPN.

These facts matter because, for instance, if plaintiff used an internet browser such as Mozilla Firefox, which blocks all tracking technologies *by default*, then nothing could have been disclosed unless plaintiff changed a setting to allow it. Other browsers have similar issues. Therefore, plaintiff's browser and browser settings matter, if she even used a browser at all. However, plaintiff's complaint contains no facts whatsoever touching upon these issues and thus establishing a plausible claim.

The Southern District of Florida recently analyzed the impact of a plaintiff's browser and blocking settings in the context of a VPPA class action claim based on an alleged disclosure to Meta via the Meta Pixel, and the court acknowledged that whether a subscriber's PII was actually transmitted depends on "(1) whether the subscriber accessed [the defendant's] website on a browser that, by default, blocks the Pixel transmission; or (2) if the subscriber accessed the website through a browser that didn't block the Pixel by default, whether some affirmative action was taken on the browser to prevent the Pixel from transmitting anyway (such as blocking cookies within the browser's settings, enabling the browser cache to self-destruct, clearing cookies, or deploying cookie blockers or anti-tracking software)." *Martinez v. D2c, LLC,* No. 1:23-cv-21394, 2024 U.S. Dist LEXIS 178570, *7 (S.D. Fla. Oct. 1, 2024) (internal citations omitted).

As of June 2019—years prior to plaintiff's allegations in this case—Mozilla Firefox implemented privacy protections that "block[ed] all trackers …" as a default setting. *See Google Analytics is Blocked by Firefox, Mozilla Explains Why,* located at https://www.searchenginejournal.com/google-analytics-is-blocked-by-firefox-mozilla-explains-why/311471/ (last visited November 15, 2024)[2]. Plaintiff does not allege that she disabled any default blockers or default settings (known as "Total Cookie Protection" which would have

[2] The Court can take judicial notice of news articles in connection with this motion to dismiss. *Sidney Hillman Health Ctr. V. Abbott Labs, Inc.,* 782 F.3d 922, 929 (7th Cir. 2015).

"prevent[ed] tracking companies from using these cookies to track [plaintiff's] browsing from site to site …" *See Firefox gets a privacy boost as Total Cookie Protection becomes the default for all users,* located at https://techcrunch.com/2022/06/14/firefox-gets-a-privacy-boost-as-total-cookie-protection-becomes-the-default-for-all-users/ (last visited November 15, 2024); *Firefox Rolls Out Total Cookie Protection By Default*, located at https://blog.mozilla.org/en/mozilla/firefox-rolls-out-total-cookie-protection-by-default-to-all-users-worldwide/?_gl=1*zndy1f*_ga*MzcwMDcxMDQzLjE3MzAzOTQwNzA.*_ga_2VC139B3XV*MTczMDQ3NzI2Mi4zLjEuMTczMDQ3NzY3Ni4wLjAuMA (last visited November 13, 2024).

Thus, plaintiff does not—and cannot—allege that her PII was disclosed. In fact, plaintiff does not even allege that she exercised the control given to her by Meta to disconnect the Facebook ID feature, and thus, the only reasonable inference is that she consented to the transmission of her Facebook ID through her own website browser (assuming she used one)—and not by defendant. Again, plaintiff's complaint is too vague and conclusory to sufficiently allege these elements under *Iqbal*. Plaintiff's complaint fails to provide sufficient facts to plausibly allege that defendant disclosed plaintiff's PII and it should be dismissed under Rule 12(b)(6).

### C. Plaintiff fails to Allege that Defendant Knowingly Disclosed Plaintiff's PII Within the Applicable Statute of Limitations.

Finally, the complaint is also very cagey about timing. The VPPA's statute of limitations is two years. 18 U.S.C. § 2710(c)(3). Plaintiff alleges that she "purchased an annual subscription" from defendant "on or around October 20, 2022." ECF No. 1 ¶ 72. However, the complaint was filed on November 15, 2024. ECF No. 1. Therefore, some of the predicate facts referenced in the complaint did not take place within two years of the filing of the complaint. The complaint fails to sufficiently allege when much of *anything* (after October 20, 2022) happened. The complaint then concludes that plaintiff is somehow entitled to "tolling" because she did not discover the alleged

VPPA violation until October 2024, when her attorney conveniently identified it for her. ECF No. 1 ¶¶ 82-87. This Court should not allow this case to go forward on so few alleged temporal facts.

As indicated above, plaintiff must plausibly allege that defendant knowingly disclosed plaintiff's PII. She must also plausibly establish that these things happened within the applicable statute of limitations period. Here, statute of limitations issues obviously exist (so much so that plaintiff found it necessary to plead five paragraphs vaguely asserting "tolling" in the complaint). ECF No. 1 ¶¶ 82-87. Thus, plaintiff's complaint should not be allowed to survive under Rule 12(b)(6) when plaintiff intentionally fails to allege *when* defendant "knowingly" "disclosed" plaintiff's PII without consent. As it stands, plaintiff's complaint simply alleges that plaintiff "watched videos" "from October 2022 until October 2023" and "from December 2023 through the present." ECF No. 1 ¶ 74. These bare temporal allegations are so obviously vague and conclusory that they should not be allowed to pass muster under *Iqbal*.

## VI. CONCLUSION

Therefore, defendant respectfully requests that this Honorable Court grant its motion and dismiss plaintiff's complaint in its entirety.

Date: February 5, 2025

Respectfully submitted,

*<u>/s/ Alfredo Ramos</u>*
Alfredo Ramos
SBN: 24110251, FBN: 3687680
framos@hinshawlaw.com
5151 San Felipe, Suite 1380
Houston, Texas 77056
Telephone: 346-344-4500
Facsimile: 312-704-3001

C. Charles Townsend
SBN: 24028053, FBN: 1018722
ctownsend@hinshawlaw.com
HINSHAW & CULBERTSON LLP

1717 Main Street, Suite 3625
Dallas, Texas 75201
Telephone: 945-229-6380
Facsimile: 312-704-3001

**ATTORNEYS FOR ANM MEDIA**

**CERTIFICATE OF SERVICE**

A true and correct copy of this document was served on February 5, 2025 as follows:

David S. Almeida
Matthew J. Langley
Almeida Law Group LLC
849 W. Webster Avenue,
Chicago, Illinois 60614
**VIA CM/ECF SYSTEM**

*/s/ Alfredo Ramos*
Alfredo Ramos