**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

LISA MARTENEY, *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

ANM MEDIA LLP, Inc. d/b/a MY-CPE,

Defendant.

Case No. 4:24-cv-04511

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. Plaintiff Alleges that MY-CPE Disclosed Personally Identifiable Information within the Meaning of the VPPA. ..... 6

A. Courts Uniformly Hold that Transmissions of Facebook IDs and URLs to Facebook Constitute Disclosures of Personally Identifiable Information. ..... 7

B. Plaintiff Sufficiently Alleges MY-CPE's Disclosed her Personally Identifiable Information. ..... 10

II. Plaintiff Plausibly Alleges that MY-CPE Knowingly Disclosed her Personally Identifiable Information. ..... 11

A. MY-CPE Knowingly Installed and Configured the Pixel on its Website Intending to Transmit Personally Identifiable Information to Facebook. ..... 12

III. Plaintiff's Personally Identifiable Information was Disclosed within the VPPA's Statute of Limitations. ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Am.'s Test Kitchen, LP*,
680 F. Supp. 3d 31 (D. Mass. 2023) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) .......... 8, 13

*Crow v. Mbugua*,
2018 WL 1135481 (S.D. Tex. Feb. 26, 2018) .......... 15

*Czarnionka v. Epoch Times Association, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) .......... 9, 12, 13

*Ellis v. Cartoon Network, Inc.*,
2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) .......... 8

*Feldman v. Star Trib. Media Co. LLC*,
659 F. Supp. 3d 1006, (D. Minn. 2023) .......... 10, 13

*Frawley v. Nexstar Media Grp. Inc.*,
2024 WL 3798073 (N.D. Tex. July 22, 2024) .......... 1, 7, 12

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) .......... 9

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) .......... 8, 13

*In re Hulu Privacy Litigation*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 9

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) .......... 6, 13

*Li v. Georges Media Grp. LLC*,
2023 WL 7280519 (E.D. La. Nov. 3, 2023) .......... 5, 9, 13

*M.K. v. Google LLC*,
2023 WL 2671381 (C.D. Cal. Mar. 27, 2023) .......... 9

*Martinez v. D2C, LLC*,
2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ..... 11

*Robinson v. Disney Online,*
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ..... 8, 9, 10

*Spivey v. Robertson*,
197 F.3d 772 (5th Cir. 1999) ..... 4

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
727 F.3d 343 (5th Cir. 2013) ..... 4

**Statutes**

18 U.S.C. § 2710 ..... *passim*

**Rules**

Fed. R. Civ. P. 12 ..... 4

Fed. R. Civ. P. 15 ..... 15

## INTRODUCTION

Plaintiff Lisa Marteney brings her class action complaint against Defendant ANM Media LLP, d/b/a MY-CPE ("MY-CPE" or "Defendant")[1] for its systematic and continuous violation of consumers' privacy rights established by the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Unbeknownst to the consumers who trusted MY-CPE to provide continuing professional education courses through online videos offered on its website, www.my-cpe.com ("Website"), MY-CPE surreptitiously installed unauthorized tracking code—the Meta Pixel ("Pixel"). Through the Pixel, MY-CPE disclosed its consumers' personally identifiable information, including their Facebook IDs together with the video materials or services they requested or obtained ("Personally Identifiable Information") without informed written consent.

Plaintiff alleges that Defendant not only installed but also configured the Pixel to disclose consumers' Personally Identifiable Information, establishing MY-CPE's knowing disclosure. *See, e.g.*, ¶¶ 49, 56-64, 77.[2] Plaintiff's allegations further establish that MY-CPE disclosed Uniform Resource Locators ("URLs") containing the titles of the videos that Plaintiff viewed on its Website and Plaintiff's Facebook ID to Facebook. *See* ¶¶ 56-71. This is sufficient to meet the pleading standard necessary to state a claim for a violation of the VPPA. *See, e.g.*, *Frawley v. Nexstar Media Grp. Inc.*, 2024 WL 3798073, at *9 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) (holding that allegations that defendant installed the pixel on its website and that plaintiff's "Facebook ID was disclosed alongside a URL containing a video title" was sufficient to state a claim under the VPPA).

---

[1] Though Defendant states that it is actually "ANM Media, LLP, incorrectly sued as ANM Media, LLP, Inc. d/b/a MY-CPE," Defendant has not requested that Plaintiff substitute a new party as defendant. If necessary, Plaintiff will move the Court for leave to substitute the correct party.

[2] All paragraph citations are to Plaintiff's Complaint. *See* ECF No. 1.

Nevertheless, MY-CPE attempts to avoid judicial scrutiny by ignoring Plaintiff's allegations and relevant case law to make three arguments that should be rejected. First, MY-CPE disclosed Plaintiff's Personally Identifiable Information to Facebook through the Pixel it installed and configured. Second, MY-CPE's disclosure of Personally Identifiable Information was done knowingly. Finally, Defendant's statute of limitations argument is specious given that even it must admit that Plaintiff alleges that her Personally Identifiable Information was disclosed by MY-CPE in violation of the VPPA well within the two-year statute of limitations. Despite MY-CPE's attempt to hold Plaintiff to a heightened pleading standard, Plaintiff's allegations are more than sufficient to meet the Rule 8 standard needed to state a claim at this stage of the litigation. For these reasons, MY-CPE's motion to dismiss should be denied.

## FACTUAL BACKGROUND

MY-CPE markets and sells business professionals access to its digital library on its Website so that they may view prerecorded video materials to prepare for the Certified Management Accountant and Certified Public Accountant Exams and to fulfill their Continuous Professional Education requirements. ¶ 3. To register for MY-CPE's online courses, subscribers create a profile and account on Defendant's Website. ¶ 30. In creating an account, MY-CPE subscribers were required to provide their personal information including, but not limited to, their names, email addresses, phone numbers, addresses or postal codes, and payment method(s). ¶ 31. MY-CPE's online courses are available as videos online and on a broad range of devices, including mobile phones and other mobile devices. ¶ 32.

Plaintiff Marteney first purchased an annual subscription from MY-CPE on or around October 20, 2022. ¶ 72. She became a consumer of MY-CPE's services by providing her Personally Identifiable Information and requesting or obtaining video content on Defendant's

Website. ¶ 73. Plaintiff watched pre-recorded videos on MY-CPE's Website that she purchased from October 2022 until October 2023 and from December 2023 through November 2024. ¶ 74. During the relevant time period, Plaintiff used her MY-CPE subscription to view videos through MY-CPE's Website on her personal devices, while logged into her Facebook account. ¶ 75. Her Facebook account is in her real name and displays her personally identifiable information such as her name and photos to the general public. ¶ 76.

When Plaintiff Marteney purchased and watched videos on MY-CPE's Website, Defendant disclosed her data to Facebook that included the videos' titles she requested and obtained with her Facebook ID. ¶ 77. Plaintiff never consented, authorized, or otherwise permitted MY-CPE to disclose her Personally Identifiable Information to third parties. ¶ 78. Plaintiff did not discover that Defendant disclosed her Personally Identifiable Information to unauthorized third parties until October 2024, after contacting undersigned counsel and discussing potential claims against MY-CPE. ¶ 87.

MY-CPE's surreptitious installation and configuration of the Pixel on its Website, systematically disclosed subscribers' Personally Identifiable Information to Facebook. ¶ 6. MY-CPE's Website hosts the Pixel and transmits "PageView" data and other events to Facebook, which include descriptive URLs dedicated solely to MY-CPE videos, including the titles that each of its subscribers requested or purchased on its Website. ¶ 55. The information MY-CPE disclosed to Facebook via the Pixel also includes the Facebook ID of a subscriber. ¶ 7. A Facebook ID is a unique sequence of numbers linked to a specific Facebook profile. A Facebook profile, in turn, identifies by name the person to whom the profile belongs (and contains other personally identifying information about the person). *Id.* Entering "Facebook.com/[FID]" into a web browser returns the Facebook profile of the person to whom the Facebook ID corresponds. *Id.* Thus, MY-

CPE is not sharing anonymized, non-personally identifiable data with third parties like Facebook. ¶ 56. The data it discloses is tied to unique identifiers, including the Facebook ID, which identifies specific subscribers. *Id.*

Defendant's operative privacy policy states that "[t]he only personally identifiable information MY-CPE obtains about individual users through our website or mobile application is information supplied voluntarily by the user." ¶ 38. The policy informs consumers that "MY-CPE does not sell, rent, or lease its customer information to unrelated third parties." *Id.* The circumstances under which MY-CPE states that it may disclose a subscriber's personal information do not include the disclosure of Personally Identifiable Information to third parties like Facebook. ¶ 40. Nowhere in MY-CPE's privacy policy does Defendant disclose that it will share subscribers' private and protected Personally Identifiable Information. ¶ 41. Ultimately, Plaintiff and class members are not informed about MY-CPE's collection and disclosure of their Personally Identifiable Information—as it is automatic, invisible, highly technical, and not disclosed in a manner compliant with the VPPA (not "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumers"). ¶¶ 22, 85.

## LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir. 2013) (cleaned up). A court may not look beyond the pleadings when deciding a Rule 12(b)(6) motion. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive dismissal, plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Plaintiff has plausibly stated a claim for a violation of the VPPA by pleading facts that establish each element of her claim. The VPPA requires Plaintiff to allege that (1) MY-CPE is a "video tape service provider," (2) MY-CPE disclosed "personally identifiable information concerning any customer," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by a statutory exception. *Li v. Georges Media Grp. LLC*, 2023 WL 7280519, at *1 (E.D. La. Nov. 3, 2023) (quoting 18 U.S.C. § 2710).

Plaintiff pleads each required element to state a claim under the VPPA:

- MY-CPE is a "video tape service provider." ¶¶ 2-3, 97 (citing 18 U.S.C. § 2710(a)(4)).
- Plaintiff—as a user and subscriber of MY-CPE's services—is a "consumer" under the VPPA. ¶¶ 12, 73, 98 (citing 18 U.S.C. § 2710(a)(1)).
- MY-CPE "knowingly" disclosed Plaintiff's Personally Identifiable Information through its installation and configuration of the Pixel. ¶¶ 49, 56-64, 77, 108.
- The information that MY-CPE disclosed—Plaintiff's Facebook ID and the title of the specific prerecorded video material that she requested or obtained—to third parties through its use of the Pixel amounts to Personally Identifiable Information. ¶¶ 7, 9, 14, 29, 46-9, 56, 100.
- And MY-CPE disclosed Plaintiff's Personally Identifiable Information without obtaining her consent "in a form distinct and separate from any form setting forth

other legal or financial obligations of the consumer" or at all for that matter. ¶¶ 29, 34, 37, 56, 102-03 (citing 18 U.S.C. § 2710(b)(2)(B)).

MY-CPE challenges Plaintiff's allegations on the merits only as to the second and third elements of the VPPA. First, Defendant argues that Plaintiff fails to allege that the information MY-CPE disclosed was Personally Identifiable Information or how it disclosed such information. *See* ECF No. 19 ("MTD") at 5-6. Second, MY-CPE contends that Plaintiff does not allege that Defendant "knowingly" disclosed her Personally Identifiable Information. *Id.* at 6-12. MY-CPE's arguments are plainly contrary to the allegations in the Complaint and well-established jurisprudence applied to substantially similar allegations by courts nationwide.

## I. Plaintiff Alleges that MY-CPE Disclosed Personally Identifiable Information within the Meaning of the VPPA.

As courts have overwhelmingly recognized, allegations that a defendant transmitted Facebook IDs and URLs identifying or naming prerecorded videos requested or obtained by consumers satisfy the pleading standard for "personally identifiable information" within the meaning of the VPPA. *See Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) (concluding that "[plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of personally identifiable information.").

MY-CPE attempts to avoid liability by imposing a heightened pleading standard, insisting that despite Plaintiff alleging precisely how MY-CPE installed and programmed the Pixel to disclose her Personally Identifiable Information to Facebook, that "plaintiff's VPPA claim is essentially conclusory gibberish." MTD at 7-8. MY-CPE simply ignores Plaintiff's allegations detailing, with screenshots, (i) the event data disclosed by the Pixel installed on Defendant's Website (¶¶ 56-71); (ii) when Plaintiff purchased a subscription from Defendant (¶ 72); (iii) when

and how she watched "prerecorded video material sold by Defendant on its Website" (¶¶ 73-75); (iv) the information she shared with Defendant and which Defendant disclosed to Facebook (¶ 73); (v) that she viewed videos while logged into her Facebook account on the same devices she used to access that account (¶¶ 75-76), and (vi) ultimately alleging that "[w]hen Plaintiff purchased and watched videos through MY-CPE, Defendant disclosed her event data, which recorded and disclosed the video's title to Facebook" and "personally identifiable information, including her Facebook ID, to Meta." (¶ 77).

These allegations are sufficient to state a claim at the pleading stage. *See Frawley*, 2024 WL 3798073, at *7 (denying defendant's motion to dismiss VPPA claims and holding that plaintiff "is not required to allege the specific videos he watched to state a claim under the VPPA" and that plaintiff stating "in his complaint that the video title and URL are transmitted to the third party" was sufficient to state a claim because "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss.") (cleaned up).

**A. Courts Uniformly Hold that Transmissions of Facebook IDs and URLs to Facebook Constitute Disclosures of Personally Identifiable Information.**

Courts have consistently held that Facebook IDs disclosed to Facebook in combination with the URLs including names of videos requested or obtained by consumers constitute "personally identifiable information" under the VPPA. MY-CPE does not cite a single case indicating otherwise. Rather, MY-CPE's assertion that "plaintiff's complaint is devoid of even the most basic factual allegations supporting the conclusion that defendant disclosed her personally identifiable information" reveals its misunderstanding of both the Complaint and the relevant case law. MTD at 9-10.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape

service provider." 18 U.S.C. § 2710(a)(1). Plaintiff alleges that MY-CPE disclosed to Facebook the Facebook IDs of visitors to its Website along with URLs of the webpages where the visitors watched or purchased prerecorded videos and that those URLs identify and contain the names of the videos. ¶¶ 11, 13, 49-65. Courts have held that substantially similar allegations support the finding that "personally identifiable information" was disclosed. *See, e.g.*, *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023) (holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable information) (collecting cases); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (same), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015).

MY-CPE cites several decisions that corroborate and bolster Plaintiff's position that the disclosures alleged in the Complaint constitute Personally Identifiable Information. For example, in *Robinson v. Disney Online*, the court considered whether an "anonymized device serial number" constituted personally identifiable information within the meaning of the VPPA. 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015); The *Robinson* Court held that the "anonymized Roku serial number at issue" did not "identify a specific person" and, therefore, was not personally identifiable information. *Id.* at 184. As *Robinson* recognized, however, an anonymized serial number on a Roku device is entirely distinct from a Facebook ID. The court wrote:

> Nor is the information disclosed by Disney equivalent to a Facebook ID. A Facebook user—even one using a nickname—generally is an identified person on a social network platform. A Facebook ID is thus equivalent to a name—it stands in for a specific person, unlike a device identifier.

*Id.*; *see also Czarnionka v. Epoch Times Association, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (noting *Robinson*'s distinction between Facebook IDs and anonymized Roku serial numbers and denying a VPPA defendant's motion to dismiss where the plaintiff alleged disclosure of Facebook IDs).

As *Robinson* suggests, courts have held that Facebook IDs and URLs of websites identifying videos requested or obtained by consumers are Personally Identifiable Information. The Southern District of New York recently summarized the jurisprudence on this subject, writing that "Courts have *uniformly* held Facebook IDs to constitute personally identifiable information under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (emphasis added). In *In re Hulu Privacy Litigation*, the court wrote "The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user." 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) (denying summary judgment regarding disclosures to Facebook). In *Georges Media Group*, the court stated "many courts have found that FIDs constitute personally identifiable information under the statute. At the very least, Meta can easily 'link' the FID to a specific user." 2023 WL 7280519, at *4 (internal citations omitted) (denying motion to dismiss). In *Czarnionka*, the court found that "[t]he FID itself represents a particular individual." 2022 WL 17069810 at *3 (denying motion to dismiss). Each of these authorities collects numerous others reaching the same conclusion.

Faced with this avalanche of authorities, MY-CPE falls back on decisions that dismissed complaints for technical pleading deficiencies. *See* MTD at 9 (citing *M.K. v. Google LLC*, 2023 WL 2671381, *8 (C.D. Cal. Mar. 27, 2023) (granting motion to dismiss because the "platform, application, or website M.K. reportedly used to watch videos, or any facts from which the Court

plausibly could infer that M.K. is a consumer and Google is a video tape service provider within the meaning of the VPPA.")); *see also Robinson,* 152 F. Supp. 3d at 184 (finding that anonymized Roku serial number was not personally identifiable information).

Here, the Complaint states: "A Meta profile . . . identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." ¶ 7. Plaintiff further alleges that a Facebook ID "identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated Facebook ID) uniquely identifies one and only one person." *Id.* Finally, the Complaint ties those allegations to Plaintiff by alleging that she had an account with Facebook and Facebook IDs associated with those profiles. ¶¶ 10, 11, 17-18; *see also Feldman v. Star Trib. Media Co. LLC,* 659 F. Supp. 3d 1006, 1020-21 (D. Minn. 2023) (finding that a plaintiff plausibly alleged his personally identifiable information via the Meta Pixel when he alleged that his Facebook profile contained his name, "making it feasible to identify [him] by reference to this information."). Accordingly, Plaintiff's allegations support the conclusion that her Facebook ID and the URLs of the video materials she requested or obtained from Defendant constitute Personally Identifiable Information within the meaning of the VPPA.

### B. Plaintiff Sufficiently Alleges MY-CPE's Disclosed her Personally Identifiable Information.

Rather than address Plaintiff's allegations, MY-CPE ignores them to argue that the "complaint fails to provide sufficient facts to plausibly allege that defendant disclosed plaintiff's personally identifiable information." MTD at 12. Defendant's argument is unsupported. Here, Plaintiff details how MY-CPE installed the Pixel on its Website, how the Pixel discloses a user's URL containing video titles and their Facebook ID to Facebook, that Plaintiff had a subscription to MY-CPE's Website and viewed prerecorded videos on the Website, when Plaintiff subscribed

to Defendant's services and when she viewed the videos on the Website, that she viewed those videos on the same devices on which she accessed her Facebook account, and, therefore, that Defendant disclosed Plaintiff's Personally Identifiable Information to Facebook through the use of the Pixel. *See, e.g.*, ¶¶ 1, 6-7, 30-32, 47-50, 56-70, 72-77. Plaintiff's allegations establish MY-CPE's disclosure of Plaintiff's Personally Identifiable Information sufficient to state a claim for a violation of the VPPA at this stage of the litigation.

MY-CPE also raises questions about Plaintiff's viewing of videos on its Website that are inappropriate at the pleading stage. MTD at 11-12. In doing so, MY-CPE improperly attempts to raise the pleading standard by insisting that, in addition to the detailed allegations regarding Plaintiff's obtaining and requesting prerecorded videos and Defendant's disclosure of Plaintiff's Personally Identifiable Information that Plaintiff already provided, Plaintiff must also detail the number of videos she watched, the browser she used, and the names of those videos. *Id.* at 10. But MY-CPE can cite no case law supporting its argument that Plaintiff make these additional factual allegations to survive a 12(b)(6) motion to dismiss. Tellingly, MY-CPE instead cites *Martinez v. D2C, LLC*, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024), an order on a motion for class certification, which applied the elements of Rule 23, not a 12(b)(6) motion to dismiss with a different standard at the pleading stage (before discovery and expert testimony). *See* MTD at 11.

## II. Plaintiff Plausibly Alleges that MY-CPE Knowingly Disclosed her Personally Identifiable Information.

Plaintiff alleges that MY-CPE knowingly disclosed its consumers' Personally Identifiable Information to Facebook by installing and configuring the Pixel on its Website in order to improve its marketing and advertising abilities. MY-CPE's argument that Plaintiff failed to "plausibly support the conclusion that defendant "knowingly" disclosed plaintiff's PII" disregards Plaintiff's allegations and is unsupported by the case law. MTD at 5.

**A. MY-CPE Knowingly Installed and Configured the Pixel on its Website Intending to Transmit Personally Identifiable Information to Facebook.**

Plaintiff adequately alleges that MY-CPE knowingly disclosed her and class members' Personally Identifiable Information to Facebook in violation of the VPPA. Defendant's assertion that "plaintiff's complaint contains no facts whatsoever supporting the bare conclusion concerning defendant's knowledge related to the purported disclosure of plaintiff's personally identifiable information," ignores the factual allegations in the Complaint establishing Defendant's knowing disclosure as well as the overwhelming case law supporting Plaintiff's claim. *Compare* MTD at 6 (emphasis in original), *with, e.g.*, ¶ 108.

Courts nationwide have consistently held that a defendant who installs the Pixel on its website knowingly makes disclosures to Facebook—as Plaintiff alleges. *See, e.g.*, *Frawley*, 2024 WL 3798073, at *9 (holding that allegations that "Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API on its website to track and transmit their Personal Viewing Information to third parties" and "[a]t all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook" were sufficient to state a claim that defendant knowingly disclosed plaintiff's personally identifiable information). Likewise, in *Czarnionka*, the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be personally identifiable information or knew it was transmitted[.]" 2022 WL 17069810, at *4. The court rejected this argument based on allegations that the defendant programmed the Pixel

into its website code and knew that it would transmit video titles and Facebook IDs to Facebook. *Id*. Other courts considering this issue have similarly reached the same conclusion.[3]

As Plaintiff alleges, MY-CPE knowingly disclosed its consumers' Facebook IDs and the URLs identifying and containing the names of the videos those consumers requested or obtained to Facebook. *See, e.g.*, ¶¶ 49, 56-64, 77. MY-CPE did so by installing and configuring the Pixel on its Website while knowing that it would transmit the Personally Identifiable Information to Facebook. For example, Plaintiff alleges:

> Defendant knew that its disclosures identified Plaintiff and Class Members to third parties. Defendant also knew that Plaintiff's and Class Members' Personally Identifiable Information was disclosed to third parties, because, inter alia, Defendant chose, installed, and programmed the Pixel and other tracking technology with the intent that those third parties receive the Personally Identifiable Information, including the Subscribers' personal identifying information, such as their Facebook ID, email addresses and phone numbers.

¶ 108. Plaintiff also alleges the following that establishes MY-CPE's knowing disclosure of Personally Identifiable Information:

- "MY-CPE installed the Meta Pixel on its Website, which discloses Plaintiff's and Class Members' Personally Identifiable Information to Facebook, because MY-CPE benefits financially from the advertising and information services that stem from use of the Meta Pixel." ¶ 47.

- "This transmission is not the User's decision but results from Defendant's purposeful use of its Facebook tracking pixels by incorporation of those pixels and code into the Website. Defendant could easily program the Pixel so that this information is not automatically transmitted to Facebook when a subscriber views videos." ¶ 50.

---

[3] *See also Lebakken*, 640 F. Supp. 3d at 1342 (holding that plaintiffs sufficiently allege conscious transmission of consumers' private information); *Georges Media Grp. LLC*, 2023 WL 7280519, at *4 (same & collecting cases); *Feldman*, 659 F. Supp. 3d at 1022 (same); *Harris*, 662 F. Supp. 3d at 1336 (same); *Belozerov*, 646 F. Supp. 3d at 315 (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (same), *appeal dismissed sub nom. Adams v. Am.'s Test Kitchen, Inc.*, 2024 WL 3515257 (1st Cir. July 17, 2024).

- "MY-CPE knew that the Facebook Pixel disclosed Personally Identifiable Information to Facebook. This was evidenced from, among other things, the functionality of the Pixel, including that it enabled Defendant to show targeted advertising to its Subscribers based on the products those Subscribers had previously viewed on the Website." ¶ 53.

- "In addition to configure its Pixel MY-CPE also chose to configure the so-called "Advanced Matching" feature for its Pixel, which tracks and discloses to Facebook Subscribers' additional personal identifiers entered into the Website forms, including the User's email, phone number, city and zip code." ¶ 59.

Any one of Plaintiff's allegations, standing alone, is sufficient to allege MY-CPE's knowing disclosure of Personally Identifiable Information. Taken together, they paint a comprehensive picture of how MY-CPE intentionally and knowingly installed and configured the Pixel to disclose its consumers' Personally Identifiable Information to Facebook. As Plaintiff alleges and the case law supports, Plaintiff has sufficiently alleged that MY-CPE knowingly disclosed her Personally Identifiable Information to Facebook. MY-CPE's motion should be denied.

## III. Plaintiff's Personally Identifiable Information was Disclosed within the VPPA's Statute of Limitations.

MY-CPE admits, as it must, that Plaintiff alleges she "watched videos on the MY-CPE from October 2022 until October 2023 and from December 2023 through the present." MTD at 13. As Plaintiff alleges, during that time "Defendant disclosed her event data, which recorded and disclosed the video's title to Facebook" as well as her "personally identifiable information, including her Facebook ID, to Meta." ¶¶ 74-77. Because the Complaint was filed on November 15, 2024, this is more than sufficient to establish that Plaintiff's VPPA claim is brought well within the VPPA's two-year statute of limitations. *See* 18 U.S.C. § 2710(c)(3).

MY-CPE claims that Plaintiff is "very cagey about timing" and asserts that because Plaintiff first purchased an annual subscription "on or around October 20, 2022" that somehow

Plaintiff's claim does not fall within VPPA's statute of limitations. MTD at 12-13. But it is Defendant being cagey as they clearly were able to identify the dates Plaintiff alleges she watched videos on Defendant's Website within the two years prior to Plaintiff filing her Complaint. *Id.* Because Plaintiff alleges that MY-CPE disclosed the titles of the videos she watched and her Personally Identifiable Information, including her Facebook ID, when she watched those videos (as recently as November 2024), Plaintiff has brought her VPPA claim within the two-year statute of limitations. ¶¶ 74-77.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Honorable Court deny MY-CPE's motion to dismiss its entirety, grant leave to amend to address any pleading deficiencies, and award all such other relief as equity and justice require.[4]

Dated: March 26, 2025

Respectfully submitted,

*/s/Matthew J. Langley*
Matthew J. Langley*
David S. Almeida*
Britany A. Kabakov*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(773) 554-9354
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

Leigh S. Montgomery
**EKSM, LLP**

[4] Leave to amend should be freely granted. *See, e.g.*, *Crow v. Mbugua*, 2018 WL 1135481, at *1 (S.D. Tex. Feb. 26, 2018) (citing Fed. R. Civ. P. 15). While Plaintiff contends that sufficient facts are pled to support her VPPA claim and associated damages, should the Court be persuaded to dismiss the claim, Plaintiff respectfully requests leave to file a First Amended Class Action Complaint, after guidance from the Court. Plaintiff submits that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

1105 Milford Street
Houston, Texas 77006
(713) 554-2377
lmontgomery@eksm.com

* *pro hac vice*

*Counsel for Plaintiff & the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

*/s/ Matthew J. Langley*